**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**J.B. HUNT TRANSPORTATION, INC.**                                                                      **PLAINTIFF**

V.                                       **CASE NO. 5:23-CV-05083**

**TRUCKSMARTER, INC.**                                                                                         **DEFENDANT**

**OPINION AND ORDER**

Now before the Court is Defendant TruckSmarter, Inc.'s Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim under Rule 12(b)(6). *See* Docs. 13 & 14. Plaintiff J.B. Hunt Transportation, Inc. filed a Response in Opposition to the Motion (Doc. 35), and TruckSmarter filed a Reply (Doc. 40). On August 17, 2023, the Court held a motion hearing and entertained oral argument. The Court ruled on the Rule 12(b)(6) portion of the Motion but took under advisement the Rule 12(b)(2) arguments.

The Court turns first to TruckSmarter's personal jurisdiction argument under Rule 12(b)(2). J.B. Hunt accuses TruckSmarter of soliciting carriers and inducing them to breach their contracts with J.B. Hunt by asking them to share their log-in credentials on Carrier 360, a proprietary web-based application maintained and operated by J.B. Hunt that allows motor carriers to access, view, place offers on, and book J.B. Hunt's trucking loads. According to J.B. Hunt, TruckSmarter accessed Carrier 360 data multiple times by and through various co-conspirator transportation carriers, misappropriated J.B. Hunt's trade secrets, and made J.B Hunt's proprietary information available on TruckSmarter's load board platform. Based on these allegations, J.B. Hunt asserts claims for tortious interference with contract and business expectancy, computer trespass, violation of the Computer Fraud and Abuse Act, conversion, violation of the Arkansas Trade Secrets Act, civil conspiracy, federal trademark

1

infringement, Arkansas common law trademark infringement and unfair competition, and federal unfair competition. The Complaint accuses TruckSmarter of "purposefully direct[ing] its [tortious] activities at Arkansas because that is where J.B. Hunt is located, where the trade secrets and other confidential information were maintained, and where J.B. Hunt's computer systems and servers are located." (Doc. 2, ¶ 6). In addition, according to Paragraphs 7, 62, 63, and 65 of the Complaint, TruckSmarter induced at least two Arkansas-based carriers, Trejo's Transport and Paye Logistics, to share their Carrier 360 log-in credentials with TruckSmarter and enable TruckSmarter to appropriate J.B. Hunt's proprietary data.

During the motion hearing, TruckSmarter's counsel admitted that TruckSmarter knowingly and intentionally accessed J.B. Hunt's trucking data through Carrier 360. But because TruckSmarter claims it did not know J.B. Hunt—and its computer servers—were located in Arkansas, TruckSmarter maintains it did not purposely avail itself of this forum, so it would offend notions of fair play and substantial justice to require it to submit to suit here.

"[W]hether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quotation marks and citation omitted). Furthermore, "mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* at 290 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Such contact must be purposeful and cannot be "so random, fortuitous, or attenuated" that a defendant "should [not]reasonably anticipate

being haled into court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985) (quotation marks and citation omitted).

The following factors are relevant when deciding whether a nonresident defendant has sufficient minimum contacts with the forum state: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). With respect to the third factor, since J.B. Hunt alleges TruckSmarter committed intentional torts, the Court may consider the so-called "effects test" announced by the Supreme Court in *Calder v. Jones* to aid in the analysis. 465 U.S. at 787–89. The effects test asks whether any facts show that the defendant's tortious conduct was "expressly aimed" at the forum state to justify the exercise of personal jurisdiction. *Id.* If the facts indicate that the defendant "knew that the brunt of the injury would be felt by [the plaintiff]" in the forum state, then he "must reasonably anticipate being haled into court there to answer for [the tort]." *Id.* at 789–90 (quotation marks and citations omitted).

Whether TruckSmarter aimed its allegedly tortious conduct at Arkansas is the crux of the jurisdictional question. TruckSmarter contends it had no idea J.B. Hunt was at home at Arkansas, and under *Walden v. Fiore*, the mere fact that J.B. Hunt was injured and happens to reside in Arkansas is not enough to establish personal jurisdiction. 471 U.S. at 290.

Examining the first and second *Land-O-Nod* factors—the nature, quality, and quantity of TruckSmarter's contacts with Arkansas—the Complaint claims TruckSmarter's business model requires the company to solicit J.B. Hunt's carriers and obtain their log-in credentials to access J.B. Hunt's Carrier 360 app. J.B. Hunt contends TruckSmarter did

3

this intentionally and repeatedly, to J.B. Hunt's detriment, and continued to do so after J.B. Hunt asked it to cease and desist.  The first and second factors weigh in J.B. Hunt's favor.

As to the third factor, the Court considers whether TruckSmarter's allegedly tortious conduct was expressly aimed at Arkansas.  TruckSmarter does not deny that it intentionally and repeatedly extracted J.B. Hunt's trucking data located on servers in Arkansas.  J.B. Hunt accuses TruckSmarter of conspiring with carriers and inducing them to share their Carrier 360 log-in credentials in order to give nonmembers access to the platform's proprietary information.  Though TruckSmarter argues this data "is available *anywhere in the world* to anyone with login credentials," (Doc. 40, p. 1 (emphasis in original)), the issue is what TruckSmarter knew or should have known when it was accessing and extracting J.B. Hunt's data.  The Court finds it plausible, if not likely, that TruckSmarter either knew or should have known that its data-mining activities were expressly aimed at Arkansas.  This is especially true given TruckSmarter's obvious knowledge of and expertise in the trucking industry, the fact that J.B. Hunt is one of the largest trucking companies in the country,[1] and that J.B. Hunt's proprietary trucking data appears to have been vital to the success of TruckSmarter's load board platform.

Although J.B. Hunt is responsible for making a prima facie showing of personal jurisdiction, this Court "must view the evidence in a light most favorable to [J.B. Hunt] and resolve factual conflicts in [J.B. Hunt's] favor." *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).  J.B. Hunt asserts TruckSmarter knew or should have known that the brunt of the injury caused by its tortious conduct would be felt by J.B. Hunt in Arkansas.  TruckSmarter denies the assertion.  This appears to be a straightforward factual

---

[1] At the motion hearing, counsel noted that J.B. Hunt has been an industry leader for decades and is the third largest trucking company in the nation.

conflict that must be resolved without the benefit of additional evidence—since neither party provided the Court with affidavits, declarations, or other proof. As the law requires that this factual conflict be resolved in J.B. Hunt's favor, the Court finds the third *Land-O-Nod* factor weighs in favor of finding TruckSmarter subject to personal jurisdiction in this district.

As for the fourth factor, Arkansas has a significant interest in providing a forum for J.B. Hunt to seek relief on its various tort claims, including computer-related crime. *See* Ark. Code Ann. § 5-41-101. And as for the fifth factor, Arkansas appears to be a convenient forum. J.B. Hunt asserts that numerous witnesses reside in Arkansas and computer and forensic data, as well as other evidence, are located here. Accordingly, J.B. Hunt has made a prima facie showing that TruckSmarter's contacts with the forum subject it to jurisdiction here, and dismissal under Rule 12(b)(2) is **DENIED**.

As for TruckSmarter's request for dismissal under Rule 12(b)(6), that motion is **DENIED** for the reasons stated from the bench—except as to the Third Claim for Relief, which alleges a violation of the Computer Fraud and Abuse Act. The Court found that the facts supporting the loss allegations at Paragraph 123 of the Complaint were deficient; however, rather than dismiss the Third Claim, the Court granted J.B. Hunt leave to file an amended complaint adding factual adornment to this allegation. **The amended pleading is due on September 19, 2023**.

**IT IS THEREFORE ORDERED** that Defendant TruckSmarter, Inc.'s Motion to Dismiss (Doc. 13). Is **DENIED**.

**IT IS SO ORDERED** on this 5th day of September, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE